FILED

2022 Mar-18  AM 11:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| CITY GEAR, LLC, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   **Case No.: 2:21-CV-00459-AMM** |
| | ) |
| BRAVADO INTERNATIONAL | ) |
| GROUP MERCHANDISING | ) |
| SERVICES, INC. and ZION | ) |
| ROOTSWEAR, LLC, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

This matter comes before the court on a motion to dismiss for lack of personal jurisdiction filed by Defendants Bravado International Group Merchandising Services, Inc. ("Bravado") and Zion Rootswear, LLC ("Zion"). Doc. 16. For the reasons explained below, the motion is **GRANTED**.

### I.    BACKGROUND

In relevant part, viewed in the light most favorable to Plaintiff City Gear, LLC ("City Gear"), the Amended Complaint for Declaratory Relief, Doc. 11, alleges as follows:

City Gear is a Tennessee limited liability company specializing in the retail sales of t-shirts, sweatshirts, and footwear with a principal place of business in Birmingham, Alabama. *Id.* ¶¶ 1, 9. City Gear is a subsidiary of Hibbett Retail,

Incorporated ("Hibbett"). *Id.* ¶ 2. Hibbett is not a party to this action. Bravado is a California corporation that provides licensing, creative, and retail services to clients throughout the music industry. *Id.* ¶¶ 3, 10. Zion, a subsidiary of Bravado, is a Florida limited liability corporation primarily engaged in the sale of merchandise bearing the image and likeness of the late musician, Bob Marley. *Id.* ¶¶ 4, 11. "Bravado and Zion purport to be the 'exclusive licensees' of the rights of publicity and/or trademark rights of numerous musical artists, including but not limited to Bob Marley, Tupac Shakur, the Rolling Stones, Nas, Willie Nelson, and many others." *Id.* ¶ 13.

Amaru Entertainment, Inc. ("Amaru") owns Tupac Shakur's publicity rights and is not a party to this action. *Id.* ¶ 26. City Gear asserts in its complaint that Bravado failed to provide "definitive proof that Bravado does . . . have valid, exclusive rights to enforce" the publicity rights owned by Amaru. *Id.* ¶ 33. Bravado provided City Gear excerpts from both a licensing agreement and a royalty statement between Amaru and Bravado. *Id.* ¶¶ 31–32.

Fifty-Six Hope Road Music Limited ("Fifty-Six Hope Road") owns Bob Marley's publicity rights and is not a party to this action. *Id.* ¶ 36. Zion provided City Gear excerpts from an agreement between Hope Road Merchandising and Zion granting Zion licensing rights to Bob Marley merchandise. *Id.* ¶¶ 41–42. City Gear admits that the agreement between Hope Road Merchandising and Zion "does

purport to license the Bob Marley name and likeness to Zion," but City Gear maintains that the agreement does not establish that Zion has exclusive rights to enforce the publicity rights owned by Fifty-Six Hope Road. *Id.* ¶¶ 49, 51.

Musidor B.V. manages the intellectual property rights of the Rolling Stones and entered into a licensing agreement with Bravado on May 14, 2009. Doc 18-1 at 20; Doc. 11 ¶ 57. Musidor B.V. is not a party to this action. Bravado provided City Gear excerpts from a licensing agreement and amendment between Bravado and Musidor B.V. that "purports to license the Rolling Stones' 'trademarks' to Bravado." Doc. 11 ¶¶ 58–59, 61. City Gear contends that Bravado has not provided definitive proof of exclusive enforcement of Musidor B.V.'s rights to the Rolling Stones' lips-and-tongue trademark. Doc. 11 ¶ 62.

"[B]ravado and Zion have engaged in extensive and systematic enforcement efforts across the United States" and have filed more than two hundred trademark lawsuits in eighteen states. *Id.* ¶¶ 14–15. "Bravado has directed its intellectual property enforcement efforts at Alabama on several occasions[,]" including by sending cease-and-desist letters to non-party Hibbett and an unnamed online clothing boutique, but has not filed a trademark lawsuit in Alabama. *Id.* ¶¶ 14, 16, 20.

"The instant suit arises out of demand letters sent to City Gear and [non-party] Hibbett between August 2019 and March 2021 wherein Bravado and Zion have

sought monetary compensation for alleged infringement of rights belong[ing] to the Rolling Stones, Nas, Tupac, and Bob Marley." *Id.* ¶ 17. City Gear asserts that the following communications reflect enforcement efforts against it:

- On August 8, 2019, Kenneth Feinswog, counsel for Bravado and Zion, sent City Gear a cease-and-desist letter on behalf of Bravado regarding merchandise bearing the likeness of the musical artist Nas. Doc. 18-1 at 2–3. Mr. Feinswog emailed this initial cease-and-desist letter; it was addressed to City Gear's main office in Memphis, Tennessee. *Id.*

- On August 30, 2019, Mr. Feinswog sent City Gear a cease-and-desist letter on behalf of Bravado and Zion regarding a claim of infringement bearing the image and likeness of Nas and the cease-and-desist of merchandise bearing the likenesses of Tupac Shakur and Bob Marley. *Id.* at 4–5. Mr. Feinswog sent this letter via email and Federal Express to City Gear's main office in Memphis, Tennessee. *Id.* at 4–5.

- On September 25, 2019, October 16, 2019, October 31, 2019, December 17, 2019, and February 14, 2020, Mr. Feinswog sent five letters regarding infringement claims to non-party Hibbett, City Gear's parent company, in Birmingham, Alabama. *Id.* at 6–14.

- On March 27, 2020, Mr. Feinswog sent City Gear a cease-and-desist letter on behalf of Bravado regarding merchandise bearing the Rolling Stones tongue logo. *Id.* at 15–16. Mr. Feinswog emailed this cease-and-desist letter; it was addressed to City Gear's main office in Memphis, Tennessee. *Id.*

- On August 14, 2020, Mr. Feinswog sent City Gear a letter following up on the settlement discussions about the claims related to Tupac Shakur and Bob Marley products and the cease-and-desist letter regarding the Rolling Stones tongue logo. *Id.* at 17–18. In the letter, Mr. Feinswog requested a substantial response to the settlement demand and an accounting of the Rolling Stones merchandise. *Id.* Mr. Feinswog emailed this letter; it was addressed to City Gear's main office in Memphis, Tennessee. *Id.*

- On December 7, 2020, Mr. Feinswog sent City Gear a letter to "respond[] to your August 28, 2020 letter to correct inaccurate statements made therein and insure that you understand my client's position." *Id.* at 19–21. Mr. Feinswog listed all documents provided that he claimed proved ownership and licensing rights of the trademarks at issue. *Id.* Mr. Feinswog concluded: "Each of the grantors of the rights have and will back my client up on all of these issues if necessary as they have done in lawsuits that my client has commenced. I am willing to answer your questions but we must move this matter forward promptly. My client has supplied you with all information necessary for you to confirm my client's rights. If we resolve this matter, my client will warrant and represent the rights it has in a settlement agreement." *Id.* at 20. Mr. Feinswog emailed this letter; it was addressed to City Gear's main office in Memphis, Tennessee. *Id.* at 19–21.

- Between November 18, 2019 and December 7, 2020, Mr. Feinswog and Tamula Yelling, Hibbitt's in-house counsel, exchanged more than fifty emails and two phone calls regarding the infringement claims and settlement negotiations. Doc. 18-2. Several of the emails were the email deliveries of the letters described above. *See id.*

- Email correspondence reflects an initial telephone call between Mr. Feinswog and Ms. Yelling on November 19, 2019. *Id.* at 23.

- The letter addressed August 14, 2020, references a second phone call regarding this matter: "[w]e spoke on June 11, 2020 regarding City Gear's concerns . . . ." Doc. 18-1 at 18.

City Gear alleges that after the filing of its initial complaint, Mr. Feinswog continued to send letters on behalf of Bravado and Zion and added an additional claim of infringement. Doc. 11 ¶¶ 17–18. The communications sent by Mr. Feinswog on behalf of Bravado and Zion included settlement demands up to $43,774. Doc. 18-1 at 9, 12.

City Gear filed its amended complaint on July 27, 2021. Doc. 11. That

complaint asserts claims in two counts: one count against Bravado and Zion seeking a declaratory judgment that Bravado and Zion do not own the publicity and trademark rights they have attempted to enforce and that they cannot demonstrate they have the right to enforce infringement of those rights; and a second count against Bravado seeking a declaratory judgment that City Gear is not liable for trademark infringement with respect to the Rolling Stones product at issue because Bravado does not own the publicity and trademark rights and because the design at issue was not used as a mark. *Id.* ¶¶ 63–74. Bravado and Zion moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). Doc. 16 at 1.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a defendant where the court lacks personal jurisdiction over the defendant. "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). If the plaintiff satisfies this burden, "the burden shifts to the defendant to make a prima facie evidentiary showing, by affidavits or otherwise, that personal jurisdiction is not present." *Mercantile Cap., LP v. Fed. Transtel, Inc.*, 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002) (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)). When the evidence conflicts, "the court

must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

## III.   DISCUSSION

Whether a court holds personal jurisdiction over a nonresident defendant requires a two-part analysis. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the court must analyze the jurisdictional question under the state's long-arm statute. *Id.* If the court finds sufficient minimum contacts within the forum to satisfy the state statute, it must then determine whether "sufficient 'minimum contacts' exist to satisfy the Due Process Clause of the Fourteenth Amendment so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

Alabama's long-arm statute allows personal jurisdiction to the extent it "is not inconsistent with the constitution of this state or the Constitution of the United States." Ala. R. Civ. P. 4.2(b). Accordingly, the question is whether assertion of jurisdiction over Bravado and Zion comports with the Due Process Clause of the Fourteenth Amendment.

"Personal jurisdiction may be general, which arise from the party's contacts with the forum state that are unrelated to the claim, or specific, which arise from the

party's contacts with the forum state that are related to the claim." *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002) (citing *Madara*, 916 F.2d at 1516 n.7).

"The due process requirements for general personal jurisdiction . . . require a showing of continuous and systematic general business contacts between the defendant and the forum state." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000). A corporation's business contacts in the forum state must be so continuous the corporation is essentially "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).

Bravado and Zion argue that the Amended Complaint does not contain "allegations to support general personal jurisdiction" and that their alleged contact with Alabama "falls far short of the 'continuous and systematic' contacts that, in rare instances, warrant general jurisdiction over non-domiciliaries." Doc. 16 at 4. In its response, City Gear did not assert that general personal jurisdiction exists over Bravado and Zion in Alabama. *See* Doc. 18 at 8–9. Because City Gear did not establish Bravado and Zion's continuous and systematic general business contacts within Alabama, the court does not have general personal jurisdiction over Bravado and Zion.

"Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *Consol. Dev. Corp.*, 216 F.3d

at 1291. The Eleventh Circuit follows a three-part test to determine whether a defendant has minimum contacts within the forum sufficient to support specific jurisdiction: (1) the contacts must give rise to the plaintiff's cause of action or be related to the cause of action; (2) the contacts must include an "act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws"; and (3) the contacts must give rise to a reasonable anticipation of litigation within the forum. *Francosteel Corp. v. M/V Charm,* 19 F.3d 624, 627 (11th Cir. 1994) (quoting *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993)) (cleaned up). The inquiry required for the first part of the test must focus on the direct causal relationship between the defendant, the forum state, and the litigation. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1356 (11th Cir. 2013); *Helicopteros Nacionales de Colombia, S.A., v. Hall*, 466 U.S. 408, 414 (1984). The defendant's activities must be related to the "operative facts of the controversy." *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 n.3 (11th Cir. 2008).  If the plaintiff establishes the first two parts of the test, the burden shifts to the defendant to make a "compelling case" that jurisdiction in the forum would violate the traditional notions of fair play and substantial justice. *Louis Vuitton Malletier*, 736 F.3d at 1355 (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

"[T]he nature of the claim in a declaratory judgment action is to clear the air of infringement charges." *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (cleaned up). "Such a claim neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit." *Id.* "The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Id.* (cleaned up); *accord J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 302 (N.D. Ohio 2021) (applying *Avocent* to trademark claims).

"While [cease-and-desist] letters themselves might be expected to support an assertion of specific jurisdiction over the patentee because the letters are purposefully directed at the forum and the declaratory judgment action arises out of the letters, . . . based on policy considerations unique to the patent context, letters threatening suit for patent infringement sent to the alleged infringer *by themselves* do not suffice to create personal jurisdiction." *Avocent Huntsville Corp.*, 552 F.3d at 1333 (cleaned up). "This is because to exercise jurisdiction in such a situation would not comport with fair play and substantial justice." *Id.* (cleaned up). "Principles of

fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." *Id.* (cleaned up); *accord J.M. Smucker Co.*, 526 F. Supp. 3d at 303. However, "judicial or extra-judicial enforcement activities within the forum, entering into an exclusive license agreement, or another undertaking imposing enforcement obligations on a party residing or regularly doing business in the forum," may support specific personal jurisdiction. *J.M. Smucker Co.*, 526 F. Supp. 3d at 303.

Bravado and Zion assert that they are not subject to specific personal jurisdiction in Alabama because City Gear's declaratory judgment action does not arise out of or relate to their alleged contacts with Alabama. Doc. 16 at 1. Instead, they argue that the declaratory judgment action "is based on whether [Bravado and Zion] are 'the owners of certain publicity and trademark rights that they are claiming,'" and "no facts related to 'ownership' have any connection" to Alabama *Id.* at 6–7 (citing Doc. 11 ¶ 67). Additionally, Bravado and Zion argue that they did not "direct[] suit-related conduct" to Alabama. Doc. 16 at 9.

City Gear alleges that Bravado and Zion "began an enforcement campaign

11

aimed at City Gear," "repeatedly and regularly threatened lawsuits against City Gear," and "conducted their enforcement business in the State of Alabama." Doc. 18 at 2. City Gear alleges that Bravado and Zion "purposefully availed themselves of conducting business in the Northern District of Alabama" by sending "cease[-]and[-]desist letters threatening litigation and adding more and more infringement contentions over a lengthy period of time." *Id.* at 3. Although Bravado and Zion cited *Avocent Huntsville Corp.*, Doc. 16 at 11–12, City Gear did not distinguish or otherwise respond to it, Doc. 18.

Bravado and Zion are not subject to personal jurisdiction in Alabama for the claims City Gear asserts. *First*, to the extent City Gear's claim for a declaratory judgment arises from the ownership of publicity and trademark rights, the issue of ownership does not relate to Alabama. Bravado is a California corporation and Zion is a limited liability corporation organized under Florida law. And the entities owning the trademarks in question—the likenesses of Tupac, Bob Marley, and The Rolling Stones—are not parties to this action, not Alabama entities, and do not have contacts with or in Alabama relating to this action. None of the licensing agreements at issue were made in Alabama or have any Alabama entities as parties.

*Second*, to the extent the declaratory judgment arises from the Defendants' enforcement of their intellectual property rights, the activities undertaken by Bravado and Zion to enforce those rights do not subject them to personal jurisdiction

in Alabama for City Gear's claims. Viewed in the light most favorable to City Gear, Bravado and Zion sent nine letters, made two phone calls, and sent more than twenty-five emails to City Gear and its non-party parent company, Hibbett. *Id.* at 10. The communications were addressed to City Gear's Memphis, Tennessee office and related to non-party suppliers with no ties to Alabama. Additionally, there is no evidence of any kind of licensing or other agreement negotiated or made in Alabama between City Gear and Bravado or Zion relating to the trademarks at issue, nor is there evidence that Bravado and Zion engaged in "other activities" relating to trademark enforcement in Alabama, such as the initiation of judicial or extra-judicial enforcement actions within this forum. Accordingly, for the same reasons that persuaded the Federal Circuit in *Avocent*, this court finds that City Gear has failed to demonstrate that personal jurisdiction exists over Bravado and Zion.

## IV.   CONCLUSION

For reasons stated above, this court concludes Bravado and Zion are not subject to jurisdiction in Alabama. Accordingly, Bravado and Zion's motion to dismiss is **GRANTED**, and this action is **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction. A separate order will be entered.

**DONE** and **ORDERED** this 18th day of March, 2022.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE